IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                                  PLAINTIFF

V.                                    CASE NO. 2:98-CR-20007-001

ROBERT J. ROSSO, JR.                                                                      DEFENDANT

MEMORANDUM OPINION AND ORDER
GRANTING SENTENCE REDUCTION

Before the Court is Defendant Robert J. Rosso, Jr.'s Motion to Reduce Sentence and accompanying supplements. (Docs. 98–100). Mr. Rosso seeks a reduction of his prison sentence and immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018. He argues that his circumstances, which include the unprecedented COVID-19 pandemic and his medical conditions, present "extraordinary and compelling reasons" justifying a reduction of his sentence. The Government filed a copy of Mr. Rosso's medical records (Doc. 102), and Mr. Rosso filed a Supplemental Motion to Reduce Sentence. (Doc. 108). The Government then filed a Response (Doc. 111), and Mr. Rosso filed a Reply with additional exhibits (Docs. 116–17).

The Court has considered all of these filings and concludes that Mr. Rosso is entitled to a reduction in his sentence. Accordingly, the Court **GRANTS** Mr. Rosso's Motions (Docs. 98 & 108) and reduces his sentence from life imprisonment to 300 months.[1]

---

[1] Contemporaneous with the filing of this Memorandum Opinion and Order, the Court has filed an Amended Judgment reflecting the complete terms of Mr. Rosso's reduced sentence.

## I.  BACKGROUND

On January 14, 1998, Mr. Rosso was named in a one-count Indictment (Doc. 1) charging him with knowingly and intentionally combining, conspiring, confederating, and agreeing with other persons to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846.  Prior to his arraignment, the Government filed an Information pursuant to 21 U.S.C. § 851 (Doc. 5) showing that Mr. Rosso had previously been convicted of two or more felony drug offenses and was therefore subject to the then-mandatory term of life imprisonment if convicted of the charged offense.  *See* 21 U.S.C. § 841(b)(1)(A) (eff. Sept. 13, 1994 to Dec. 20, 2018), *amended by* First Step Act of 2018, Pub. L. No. 115–391, § 401, 132 Stat. 5194, 5220 (2018) (replacing the mandatory life term with a 25-year mandatory minimum).

Facing a mandatory term of life imprisonment, Mr. Rosso opted to take his chances at trial.  The jury found him guilty.  In his presentence report ("PSR"), he was held responsible for 4.2 kilograms of a mixture containing methamphetamine, which corresponded to a 34-point base offense level.  He also received a 4-point enhancement for being an organizer or leader of a criminal activity involving five or more participants.  *See* Doc. 14.  He received no points for acceptance of responsibility, so his total offense level was 38.  His criminal history included one conviction in 1989 for possession of controlled substance for sale, a 1992 conviction for possession with intent to deliver cocaine, and a 1994 conviction for possession of meth.  *Id*. at pp. 9–10.  Based only upon these convictions, he would have had a criminal history category of IV, but because he was determined to be a career offender, his criminal history category was increased to a VI.  Under the 1997 Guidelines, the Guideline range for a total offense level of 38 and a

criminal history score of VI was 360 months to life.  Due to the applicable statutory mandatory minimum, however, the Court was compelled to sentence Mr. Rosso to life imprisonment.  (Doc. 16, pp. 1–3).  Mr. Rosso entered federal custody in January 1998, where he has remained ever since.  (Doc. 108, p. 2).  The Eighth Circuit affirmed the Court's decision, *see United States v. Rosso*, 179 F.3d 1102, 1105–06 (8th Cir. 1999), and his requests for post-conviction relief have been unsuccessful.  *See* Docs. 48, 54, 59, 75.

Mr. Rosso's incarceration has not been without incident.  Between 1998 and 2011, Bureau of Prisons ("BOP") officials disciplined him approximately 20 times for incidents relating to drugs and alcohol.  *See* Doc. 108-4, p. 2.  He was twice disciplined by the BOP for assault without serious injury, once for possessing a dangerous weapon, and once for fighting.  *Id.*  These events occurred from 2001 to 2003.  According to Mr. Rosso, his poor behavior during his first decade of incarceration was caused by his prior drug addiction and participation in a prison gang.  *See* Doc. 98-1, pp. 8–10.  Since August 2011, however, Mr. Rosso has had no recorded disciplinary events.

Indeed, in spite of his life sentence, it appears that Mr. Rosso has used his last decade productively by obtaining his GED and completing continuing education courses.  His progress report from the BOP indicates that he displays a "strong work ethic" in his job as an orderly and that he receives above-average work performance ratings.  *Id.* at p. 1.  Moreover, Mr. Rosso has taken the initiative to become a successful writer and has written several articles as well as a book manuscript.  Further, in 2017, he married his wife.

Today, Mr. Rosso is 51 years old and imprisoned at FCI Terra Haute.  His medical

records demonstrate that he has been diagnosed with multiple serious medical conditions.  (Doc. 108, p. 1).  In August 2016, his doctor diagnosed him with recurrent superficial bladder cancer, and his doctor's notes indicate that Mr. Rosso's history with this illness extends back to 2004. (Doc. 98-26, p. 4).  His latest recurrences were in 2016 and 2019, when he had a tumor removed from his bladder. (Doc. 102-1, p. 176; Doc. 98-27, p. 1).  Due to the nature of this condition, Mr. Rosso receives regular surveillance cystoscopies to determine whether any cancerous tumors have reemerged. (Doc. 102, p. 36).  Adding insult to injury, due to his bladder treatments, Mr. Rosso suffers from incontinence, which requires him to wear diapers in order to avoid soiling his clothing and bed linens. (Docs. 98-43 & 98-44).  Letters from his fellow prisoners indicate that because laundry facilities are not available every day, Mr. Rosso sometimes has to clean his laundry in his cell sink.  (Doc. 98-46).  Moreover, other inmates harass Mr. Rosso due to his incontinence.  *Id.*

Mr. Rosso also suffers from hypertension and cardiac issues.  In April 2019, a cardiologist diagnosed Mr. Rosso with sinus bradycardia with an incomplete right bundle branch block. (Doc. 102-1, p. 169). In October 2020, he visited a cardiologist complaining of chest pains, and the cardiologist prescribed him nitroglycerin. (Doc. 117-5).  The same cardiologist noted that Mr. Rosso had prior tests showing signs of ischemia (*i.e.*, restricted blood flow to the heart).  *Id.*  Furthermore, the cardiologist noted Mr. Rosso's hypertension and directed that his blood pressure be checked once a week.  *Id.*

Mr. Rosso's medical records show that he experiences chronic back pain and has an elevated amount of prostate-specific antigens ("PSA") in his blood, which may indicate the presence of prostate cancer.  In January 2020, his physical therapist noted that Mr.

Rosso has "severe facet arthropathy at L4-5 and L5-S1" and suggested that Mr. Rosso receive facet injections. (Doc. 102, p. 24).  As for his PSA levels, a doctor's note from May 2020 recommends a prostate biopsy if Mr. Rosso's PSA level remains elevated, though a subsequent PSA test came back normal and no biopsy was performed.  (Doc. 102, pp. 73–75).

As a release plan, Mr. Rosso proposes that he return to his family farm in Hartford, Arkansas, where his parents, sister, and brother-in-law presently reside.  (Doc. 108, p. 17).  His sister, Debra Baker, presents a letter in which she states that the farm includes two separate houses and that Mr. Rosso is welcome to reside in one of the homes with his elderly parents.  (Doc. 108-6).  She represents that Mr. Rosso will be able to isolate on the farm in order to avoid contracting COVID-19.  *Id*.  Furthermore, she indicates that Mr. Rosso will assist her and her husband in caring for their aging parents.  *Id.*

## II.  LEGAL STANDARD

Generally speaking, sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c).  One notable exception to this rule is that the sentencing court may reduce a sentencing upon a showing that:  (1) the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the passage of the First Step Act in 2018, only the Director of the BOP could file a motion for a reduction in sentence based upon "extraordinary and compelling reasons."  But the First Step Act now authorizes prisoners to petition the sentencing court directly after

exhausting their administrative remedies, and this is how Mr. Rosso's request is before the Court.

Congress has not defined what reasons qualify as "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Instead, Congress directed the Sentencing Commission to promulgate "the criteria to be applied and a list of specific examples" of extraordinary and compelling circumstances. *Id*. The Sentencing Commission did so before the passage of the First Step Act, but has not updated it since. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). In Subsections (A)–(C) of an Application Note to U.S.S.G. § 1B1.13, the Commission enumerated three specific "reasons" that qualify as "extraordinary and compelling":

(A) terminal illness diagnoses or serious medical, physical or mental impairments that substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which a defendant is unlikely to recover and;

(B) aging-related health decline where a defendant is over 65-years old and has served at least ten years or 75% of his sentence; or

(C) two family-related circumstances: (i) death or incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

*See id.* cmt. n.1(A)–(C). In addition, Subsection (D) of the Application Note is a "catch-all" provision that contemplates granting early release if a "reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists. *Id.* at cmt. n.1(D).

In the wake of Congress's passage of the First Step Act, several district courts have held that federal judges may use their discretion to apply the criteria in Section 1B1.13, including the "catch-all" provision in Subsection (D), just as the BOP Director would when considering a request for compassionate early release. *See United States*

6

*v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases); *United States v. Conner*, 2020 WL 3053368, at *3 (N.D. Iowa June 8, 2020) ("Although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes."). The Court agrees with those district courts who have found that "extraordinary and compelling reasons" for release may be justified outside of those listed in the non-exclusive criteria of subsections (A)–(C) of the Sentencing Commission's policy statement. Of course, the Commission's existing policy statement provides helpful guidance, which the Court considers in its assessment. Applying this analysis, other district courts have found that the COVID-19 pandemic, in conjunction with other facts, qualifies as an "extraordinary and compelling" reason justifying a sentence reduction. *See United States v. Brown*, 2020 WL 2091802, at *9 (S.D. Iowa Apr. 29, 2020); *Miller v. United States*, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020); *United States v. Rodriguez*, 2020 WL 1627331, at *6–7 (E.D. Pa. Apr. 1, 2020).

### III.  DISCUSSION

#### A.  Mr. Rosso Has Exhausted His Administrative Remedies

As a threshold matter, Mr. Rosso must satisfy certain procedural requirements before the Court may consider his request for a sentence reduction. First, Mr. Rosso bears the burden of showing that he has already exhausted his administrative rights with the BOP. *United States v. Davis*, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019). The relevant statute states that, in order for a court to modify a term of imprisonment after it has been imposed, the defendant must have

> fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days

>from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier* . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added). The second path set forth in the statute clearly states only that thirty days must pass after the defendant requests early release from his warden. Nothing more is required. *United States v. Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020) (citing *United States v. York*, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019)). In other words, Section 3582(c)(1)(a)'s gate-keeping provision is not a true exhaustion requirement, "as it allows a defendant to come to court before the agency has rendered a final decision." *United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

Here, more than 30 days have passed since Mr. Rosso sent his request for early release to his warden. (Doc. 98-1, p. 25). The Government agrees that Mr. Rosso has exhausted his remedies. (Doc. 111, p. 3 n.2). Thus, Mr. Rosso has satisfied the statute's exhaustion requirement, and the Court turns to the merits of his Motion.

### B. Mr. Rosso Has Articulated Extraordinary And Compelling Reasons For A Sentence Reduction

Mr. Rosso argues that his medical conditions qualify as "extraordinary and compelling reasons" under Subsections (A) and (D) of the Sentencing Commission's policy statement found at Application Note 1 to § 1B1.13. The Government focuses on whether Mr. Rosso's medical conditions, in conjunction with the COVID-19 pandemic, qualify as "extraordinary and compelling reasons" under Subsection (D). Specifically, the Government argues that Mr. Rosso's medical conditions do not create an increased risk of severe illness should he contract COVID-19. (Doc. 111, pp. 5–6). It also argues that the COVID-19 outbreak in Terra Haute is contained. *Id.* at pp. 6–7. The Government

does not directly address whether Mr. Rosso's medical conditions, by themselves, qualify as "extraordinary and compelling reasons" under Subsection (A). For the reasons set forth below, in this Court's view, notwithstanding the likelihood of Mr. Rosso contracting COVID-19, Mr. Rosso's medical circumstances—particularly his recurrent bladder cancer, heart condition, and hypertension—present "extraordinary and compelling reasons" for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and Subsection (A) of Application Note 1 to § 1B1.13.

At the outset, the Court addresses the presence of COVID-19 in FCI Terra Haute. Mr. Rosso argues that the BOP cannot control the COVID-19 outbreak in FCI Terra Haute due to crowded conditions and the inherent lack of social distancing in the facility. (Doc. 108, pp. 8–9). The Government argues that the outbreak in FCI Terra Haute has been reduced to a small number of cases and therefore poses no threat to Mr. Rosso. According to the BOP's coronavirus tracking website, FCI Terre Haute has no active cases of COVID-19; a total of 429 inmates have recovered from COVID-19, and 4 inmates have died. *See COVID-19 Coronavirus*, Fed Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021). Thus, while it is entirely probable that COVID-19 may reemerge within FCI Terra Haute, the BOP's public data suggests that COVID-19 has been contained within that institution.

Still, after reviewing Mr. Rosso's medical records, the Court finds that Mr. Rosso's bladder cancer, along with his other medical conditions, constitutes "extraordinary and compelling reasons" justifying a sentence reduction under Subsection (A) of Application Note 1 to § 1B1.13. In the past seventeen years, Mr. Rosso has had "well over 20 tumors removed" from his bladder and had a "small superficial recurrence" in 2019, though the

latest tumor turned out to be benign. (Doc. 102-1, p. 176). As a result of this condition, Mr. Rosso must undergo regular cystoscopies to determine if any new tumors have appeared. (Doc. 102, p. 36). Moreover, Mr. Rosso suffers from incontinence because of the multiple cystoscopies he receives per year and the significant amount of scar tissue in his bladder due to the removal of tumors. Due to this incontinence, Mr. Rosso has considerable difficulty maintaining his hygiene in an institutional setting. He describes the humiliation he suffers due to wearing diapers, and other prisoners attest that Mr. Rosso has great difficulty keeping his clothing and linens clean. (Doc. 98-46; Doc. 108-10). Other district courts have found that cancer qualifies as "extraordinary and compelling reasons" justifying a sentence reduction. *See United States v. Smith*, 464 F. Supp. 3d 1009, 1019–20 (N.D. Iowa 2020) (reviewing compassionate release cases involving cancer and holding that lung cancer qualifies as an extraordinary and compelling reason). In the Court's view, Mr. Rosso has demonstrated that his bladder cancer and incontinence are serious medical conditions that "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility" and that he is not expected to recover from those conditions. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

Besides cancer, Mr. Rosso suffers from a heart condition and hypertension. While the Government argues that there is little proof of the heart condition and hypertension, the Court disagrees with this characterization of the evidence. Mr. Rosso's medical records show that in 2019 a cardiologist diagnosed him with sinus bradycardia with an incomplete right bundle branch block (Doc. 102-1, p. 169). Further, in October 2020, he visited a cardiologist complaining of chest pains, and he was prescribed nitroglycerin (Doc. 117-5). The same cardiologist noted that Mr. Rosso had prior tests showing signs

of ischemia and directed that his blood pressure be checked once a week.  *Id.*  Thus, the evidence shows that Mr. Rosso does suffer from hypertension and that his heart condition is severe enough to warrant the prescription of nitroglycerin.

In sum, even without considering the COVID-19 pandemic and the material risk of its reemergence in FCI Terra Haute, the Court finds that Mr. Rosso's serious medical conditions are enough, by themselves, to qualify as "extraordinary and compelling reasons" for a sentence reduction.

### C.  Mr. Rosso Is Not A Danger To Others Or The Community

The Sentencing Commission's policy statement, which provides helpful guidance, provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Mr. Rosso argues that he is no longer a danger to anyone, and the Government does not make any arguments on this point.

The Court finds that Mr. Rosso is not a danger to the safety of others or to the community under the factors listed in 18 U.S.C. § 3142(g).  Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial.  These same factors guide the Court's release determination in this analysis.  The factors the Court must consider include:  "the nature and circumstances of the offense charged"; "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

11

Mr. Rosso's crime of conviction was undoubtedly serious: He was responsible for trafficking large quantities of methamphetamine across state borders into Arkansas. But Mr. Rosso's criminal history only involves three convictions for non-violent drug related offenses, all of which occurred from 1989 to 1992—one for possession and two related to drug distribution. (Doc. 14, pp. 8–9). None of these convictions involved violence or firearms. Moreover, while Mr. Rosso's first decade of imprisonment featured multiple violations related to the use of drugs and alcohol, the last time he received any disciplinary violation was in August 2011. (Doc. 108-4, p. 2). The fact that Mr. Rosso has gone nearly a decade without any drug or alcohol-related violations demonstrates that his prior drug addiction no longer poses a threat to others.

Mr. Rosso's past history of violence while incarcerated does give the Court some pause. His prison record indicates three violent encounters throughout his imprisonment: two instances of assaulting without serious injury and one instance of fighting with another person. *Id.* at p. 2. These altercations occurred in 2001 and 2003. *Id.* Mr. Rosso was also disciplined for possessing a dangerous weapon in 2002. *Id.* While these incidents were serious, it has been seventeen years since Mr. Rosso was last disciplined for engaging in a violent altercation. This extensive period of good behavior demonstrates that Mr. Rosso has learned from his past behavior and poses little risk. Moreover, the Court notes the numerous letters of support it has received on behalf of Mr. Rosso, which indicate the strong community and family support Mr. Rosso would receive if released. *See* Docs. 108-6; 108-8. Indeed, upon release, Mr. Rosso's family plans to allow him to live on their farm in Hartford, Arkansas. In the Court's view, the support of his family and

friends—and a 10-year term of supervised release—should help Mr. Rosso transition back to being a law-abiding member of the community.

Accordingly, pursuant to 18 U.S.C. § 3142(g), the Court finds that Mr. Rosso does not presently pose a danger to any person or the community if his sentenced is reduced to 300 months and a 10-year term of supervised release.

### D.  A Sentence Reduction Is Consistent With The Section 3553(a) Factors

Finally, Mr. Rosso argues that the Section 3553(a) factors warrant a reduction in his sentence.  Specifically, he argues that he is rehabilitated, his mandatory term of life imprisonment is unnecessarily long, and that the COVID-19 pandemic has the effect of making his punishment greater that the Court originally intended.  The United States responds that the Section 3553(a) factors do not favor early release because early release "would fail to reflect the seriousness of his offense or promote respect for the law."  (Doc. 111, p. 8).

The applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

>    (4) the kinds of sentence and the sentencing range established for—
>
>       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
>
>    (5) any pertinent policy statement . . . .
>
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.*

Undoubtedly, Mr. Rosso's offense conduct, whereby he acted as the ringleader for a methamphetamine trafficking organization, was extremely serious. But Mr. Rosso has been in custody for 277 months—23 years—which is a considerable punishment, particularly for a non-violent offender whose criminal history consists solely of non-violent drug offenses. And while Mr. Rosso's behavior while incarcerated has not been perfect, he has gone almost a decade without any disciplinary violations. Thus, it appears to the Court that Mr. Rosso's offense conduct and his personal history are consistent with a reduction in his sentence.

Moreover, it appears that society—as represented by Congress—no longer believes that third-time drug offenders should be subjected to a mandatory life sentence. *See United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020) (noting that courts may consider "new statutory minimum or maximum penalties" when evaluating a motion for compassionate release under the First Step Act). Indeed, the amended statutory mandatory minimum for third-time drug offenders is now 25 years (300 months), and Mr. Rosso has already served approximately 277 months. Thus, if the 25-year mandatory

minimum had been in effect at the time this Court originally sentenced Mr. Rosso, it is probable that—due to good time credits and the fact that Mr. Rosso would likely have pleaded guilty rather than risk a trial—he would already be a free man.[2] In the Court's view, Congress's changes to the sentencing scheme underscore the fact that the time Mr. Rosso has already served adequately reflects the seriousness of his offense and provides just punishment for that offense.

The Section 3553(a) factors also counsel the Court to avoid unwarranted sentence disparities among similarly situated defendants. To this end, the Court considers the sentence a similarly situated defendant would receive if sentenced under today's Guidelines. If a similarly situated defendant were convicted of the same crime as Mr. Rosso and sentenced today, not only would he be subject to a lower mandatory minimum, but his base offense level would be a 32 rather than a 34. *See* U.S.S.G. § 2D1.1(c)(4) (setting base offense level as a 32 for defendants held responsible for at least 1.5 kilograms and less than 5 kilograms of methamphetamine). If that defendant also received a 4-point leader/organizer enhancement, his adjusted offense level would have been a 36. As a career offender, this hypothetical defendant's adjusted offense level would be then be bumped up to a 37. *See* U.S.S.G. § 4B1.1(b). Assuming he were to plead guilty and receive a 3-point reduction for acceptance of responsibility, that defendant's total offense level would be a 34. A total offense level of 34 and a criminal history score of VI correspond to a Guideline range of imprisonment of 262 to 327 months;

---

[2] In this scenario, as a result of his guilty plea, he likely would have received a three-point reduction to his total offense level. With such a reduction, his total offense level would have been a 35. Given that his criminal history category was a VI, his Guideline range of imprisonment under the then applicable Guidelines would have been 300 months to 365 months. U.S.S.G. Ch.5, Pt.A (Nov. 1997).

since the bottom of that range is below the 300-month statutory minimum, the adjusted Guideline range would be a 300 months to 327 months. In other words, were Mr. Rosso to meet his recently sentenced doppleganger, that individual would almost certainly have received a sentence somewhere in the ballpark of 300 months—not life imprisonment.

Finally, the Court is not letting Mr. Rosso entirely off the hook. Under 18 U.S.C. § 3582(c)(1)(A), when modifying a sentence for compassionate release, the Court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment . . . ." Pursuant to this authority, the Court will impose a 10-year term of supervised release upon Mr. Rosso, which will serve the dual purpose of assisting his transition back into society and serving as a sanction that accomplishes the purposes of general deterrence. The conditions of Mr. Rosso's supervised release are set forth in the Amended Judgment filed contemporaneously.

In sum, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Rosso's sentence to 300 months from life imprisonment.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Mr. Rosso is entitled to a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). **IT IS THEREFORE ORDERED** that Defendant Robert J. Rosso, Jr.'s Motion for Compassionate Release (Doc. 98) and Supplemental Motion to Reduce Sentence (Doc. 108) are **GRANTED** for the reasons stated above.

**IT IS FURTHER ORDERED** that Mr. Rosso's term of imprisonment is reduced to 300 months. The Court imposes a 10-year term of supervised release once Mr. Rosso

is released. The Court enters contemporaneously a separate Amended Judgment to reflect Mr. Rosso's amended sentence, including the terms of his supervised release.

**IT IS FURTHER ORDERED** that the BOP is **DIRECTED** to calculate Mr. Rosso's new release date based upon the amended sentence and any good time credits he has accrued since he was originally incarcerated.

**IT IS SO ORDERED** on this 12th day of April, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE